1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

| | |
|---|---|
| IRENE MENDOZA, | Case No.  1:15-cv-00975-SKO |
| Plaintiff, | **ORDER RE PLAINTIFF'S SOCIAL SECURITY APPEAL** |
| v. | |
| CAROLYN W. COLVIN, | |
| Acting Commissioner of Social Security, | |
| Defendant. | |

16

## I.    INTRODUCTION

17

18

19

20

21

Plaintiff, Irene Mendoza ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits pursuant to Title XVI of the Social Security Act.  42 U.S.C. § 1381-83. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

22

## II.    FACTUAL BACKGROUND

23

24

25

26

27

Plaintiff was born on February 8, 1967, and was 39 years old when she was initially found disabled as of January 9, 2006.  (Administrative Record ("AR") 12; 95 (agency determination dated April 20, 2006).)  On January 11, 2012, the agency found Plaintiff had medically improved as of January 1, 2012.  (AR 76.)  Plaintiff requested a hearing to dispute the determination, alleging she remained disabled due to depression, carpal tunnel syndrome, panic attacks, and

28

---

[1]    The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7; 8.)

1    sleeping problems.  (AR 80.)   On September 24, 2013, Plaintiff appeared with counsel and

2    testified in a hearing before an ALJ.  (AR 38-69.)  In a decision dated November 20, 2013, the

3    ALJ affirmed the cessation of benefits and found Plaintiff's "disability ended on January 1, 2012,

4    and that [she] has not become disabled again since that date.  (AR 12.)

5    **A.      Relevant Medical Evidence**[2]

6          On December 12, 2011, consultative examining psychiatrist Dr. Gil Schmidt, Psy. D.,

7    conducted a psychiatric examination at the request of the agency.  (AR 328-35.)   Dr. Schmidt

8    noted Plaintiff was living with her boyfriend of more than two decades and her five children.

9    (AR 328.)  Plaintiff reporting attending school through the 10th grade, and dropping out because

10   her family moved and she lacked parental support to finish school.  (AR 329.)   The longest she

11   worked for an employer was three years, and she stopped working in 2001 "after having quit

12   because she did not have transportation anymore and has not sought work since."  (AR 329.)

13         Plaintiff was on time for her appointment, "observed to be socially interacting with other

14   clients while waiting for their respective interviews," and her "behavior, mood and gait all

15   appeared to be within normal limits."  (AR 328.)  Plaintiff reported suffering depression for the

16   past two decades "because of marital discord," and that significant other was currently dating a

17   younger woman.  (AR 328.)  Plaintiff reported that she had not found counseling beneficial,

18   though Dr. Schmidt observed Plaintiff "has been in and out of counseling for crisis intervention

19   only and has not appeared to work on any root issues that have been promoting the marital

20   discord."  (AR 329.)   Dr. Schmidt opined that Plaintiff's "concerns appear to be situational

21   depression."  (AR 328.)

22         Plaintiff reported showering 2-3 times per week, preparing and cooking her own meals,

23   and taking care of her own hygiene without prompting or assistance.  (AR 331.)  She reported

24   sleeping between 8 and 12 hours at a time as well as a disturbed sleep pattern of repeated

25   awakening to use the restroom.  (AR 331.)  Dr. Schmidt noted Plaintiff "is capable of both light

26

27   [2]   As Plaintiff contends the ALJ adjudicated the wrong time period, failed to appropriately consider medical evidence
     from one of her treating providers, and improperly evaluated Plaintiff's credibility, only that medical evidence
28   relevant to Plaintiff's challenge will be summarized in the decision.

1  and heavy duty domestic chores without any noted limitations." (AR 331.) Though Plaintiff

2  reported suffering from obsessive-compulsive disorder, Dr. Schmidt found "no evidence

3  suggested during her presentation that would be supportive of this diagnosis" and opined that

4  Plaintiff "appeared to be over endorsing mental health symptoms." (AR 331-32 (observing

5  Plaintiff to be "often times over endorsing symptoms both typical and atypical").)

6         Dr. Schmidt diagnosed Plaintiff as malingering, and assigned Plaintiff with a GAF[3] scale

7  score of 71-80, reflecting "no significant impairment." (AR 332.) Dr. Schmidt opined Plaintiff's

8  "functional level appears to be adequate with no significant mental health impairment" and found

9  her prognosis "good," and concluded that Plaintiff's "mental health condition will probably abate

10 within the next 12 months given the stable condition of her mental health condition, her high level

11 of functioning, and the available mental health resources that she is presently accessing within her

12 community." (AR 332-33.) Dr. Schmidt found Plaintiff had no mental health functional

13 impairments. (AR 333-34.)

14        On January 10, 2012, reviewing agency psychiatrist Dr. Ida Hilliard, M.D., completed a

15 psychiatric review technique form. (AR 350-63.) Dr. Hilliard concluded that Plaintiff's medically

16 determinable personality disorder was not severe, and found Plaintiff was mildly impaired in her

17 activities of daily living, ability to maintain social functioning, and ability to maintain

18 concentration, persistence, and pace. (AR 358.) Dr. Hilliard concluded there was evidence of

19 significant medical improvement in Plaintiff's depressive symptoms. (AR 360-62.)

20        Plaintiff saw Dr. Franco Song Seo, M.D., twice in 2013 at Kern County Mental Health.

21 (AR 527-41.) On April 25, 2013, Plaintiff complained of pain in her knees and back, headaches,

22 and carpal tunnel syndrome, and reported that she was unable to work due to her medical issues.

23 (AR 533.) Plaintiff reported good response and compliance with her mental health medications,

24 and requested to be continued on the same medications. (AR 533.) On examination, Plaintiff was

25 appropriately dressed, made good eye contact, was cooperative, and her behavior was

26

27 [3]  Global Assessment of Functioning (GAF) scale score is a numeric scale (1 through 100) used by mental health
    clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults.
28 Diagnostic and Statistical Manual of Mental Disorders IV, American Psychiatric Association (4th ed. 2000) at 34.

1  unremarkable.  (AR 535.)   Plaintiff's mood was sad, with affect congruent to mood and

2  appropriate to situation and content.  (AR 535-36.)  Plaintiff's intensity, range and stability were

3  normal, and though her speech was slow with low tone, the amount, clarity, and fluency of her

4  speech was normal.  (AR 536.)  Though Plaintiff's concentration was "impaired," her intelligence

5  was "below average," and her immediate and recent memory and insight were "poor" (AR 537),

6  Dr. Seo observed that Plaintiff's thought process was logical, with unremarkable thought content,

7  and she was oriented to person, place, date and time (AR 536-37).  Dr. Seo diagnosed Plaintiff

8  with mood disorder, opioid dependence, and personality disorder and assessed Plaintiff with a

9  GAF scale score of 50, reflecting serious symptoms or a serious impairment in social, occupation,

10  or school functioning.  (AR 538-39.)

11      On July 22, 2013, Plaintiff was observed to be "much improved" and "hopeful about her

12  future and recovery."  (AR 531.)  On examination, Plaintiff was observed to be anxious and

13  euthymic and oriented to person, time and place, with unremarkable thought process, appropriate

14  affect and cooperative behavior, good eye contact, normal speech, fair insight, judgment, and

15  memory, intact concentration, and below average intelligence.  (AR 528-29.)  Despite these

16  observations, Dr. Seo checked boxes indicating Plaintiff's "current disability" was "moderate,"

17  she was unable to work, her prognosis was "fair," and the expected length of treatment would be

18  six months.  (AR 532.)  Dr. Seo recommended Plaintiff continue with her current medications and

19  transferred her treatment back to her primary care physician.  (AR 532.)

20  **B.    Testimony**

21      **1.    Plaintiff's Testimony at Hearing**

22      Plaintiff testified that she cannot mop and sweep because of her hands and back, but that

23  she can fold clothes and can microwave food.  (AR 46-47.)  Plaintiff can use her fingers to pick up

24  small things from the table, perform her own personal care, and tie her shoes.  (AR 47.)  She

25  spends most of her day sleeping, lying down, or watching television.  (AR 49.)  Plaintiff takes

26  Vicodin for the pain in her hands, but not for the pain in her back.  (AR 50.)  Plaintiff testified that

27  she can sit of approximately 30 minutes at a time and that while her medications help with her

28  depression, she experiences anxiety when "something comes up."  (AR 52; 56.)

4

1

**2.     Vocational Expert Testimony at Hearing**[4]

2         The ALJ asked the Vocational Expert ("VE") whether a hypothetical individual of

3    Plaintiff's age and educational background who can lift and carry 10 pounds frequently and 20

4    pounds occasionally; sit, stand, and walk for six hours in an eight-hour day; frequently climb

5    ladders, ropes, scaffolds, ramps, and stairs; frequently stoop, kneel, crouch, and crawl; frequently

6    reach, handle, finger, and feel with her bilateral upper extremities; should avoid extreme cold and

7    wetness; and is limited to simple, routine, and repetitive unskilled work would be able to perform

8    the requirements of any work in the national economy.  (AR 64-65.)  The VE testified such an

9    individual could work as an assembler of small products, DOT 706.684-022, and inspector, DOT

10   559.687-074, both light, unskilled work with an SVP[5] of 2.  (AR 65-66.)

11        The ALJ then asked the VE whether an individual who additionally would need to

12   alternate sitting and standing at will and could not sit or stand more than 30 minutes at a time

13   could work.  (AR 66.)  The VE testified, based on his experience, that such an individual could

14   perform the requirements of small products assembler and inspector "as sit, stand stools are

15   furnished" without erosion in the number of available jobs.  (AR 66.)

16        The ALJ then asked whether an individual with the same total limitations, except that they

17   could only lift a maximum of 10 pounds, could work.  (AR 66-67.)  The VE testified that such an

18   individual could work as a bench hand assembler, DOT 715.684-026, table worker, DOT 739.687-

19   182, and lens inserter, DOT 713.687-026, all unskilled, sedentary work with an SVP of 2.

20   (AR 67.)

21        The ALJ finally asked whether an individual who would also be off task more than 15

22   percent of the work day would be able to work.  (AR 67.)  The VE testified such an individual

23   could not work.  (AR 67.)

24   //

25

26   [4]  The VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT").  (AR 66; 67.)

27   [5]  Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average
28   performance in a specific job-worker situation.

**C.      Administrative Proceedings**

On November 20, 2013, the ALJ issued a written decision and found that the April 20, 2006 decision finding Plaintiff disabled was the "comparison point decision" for the purpose of determining whether medical improvement had occurred.  (AR 14.)  At the time of the comparison point decision, Plaintiff had been unable to engage in sustained work activities due to depression and carpel tunnel syndrome.  (AR 14.)

The ALJ found that as of January 1, 2012, Plaintiff had medically determinable impairments of bilateral carpal tunnel syndrome, degenerative disc disease of the cervical spine, spondylosis of the lumbar spine, depression, and personality disorder.  (AR 14.)  The ALJ determined that these impairments did not meet or equal a listed impairment.  (AR 14.)  The ALJ found that as of January 1, 2012, Plaintiff had medically improved so that she had the residual functional capacity ("RFC") to perform a range of sedentary work.  (AR 14-15.)

The ALJ found that, beginning on January 1, 2012, Plaintiff had the RFC to perform a range of sedentary work, except that she is limited to

> . . . lifting and carrying 10-pounds at any time, and sitting and stand and/or walking for 6-hours total in an 8-hour day with appropriate breaks. [Plaintiff] must be able to alternate between sitting and standing at will, with no sitting/standing more than 30 minutes.  She can frequently use ladders, ropes, scaffolds, ramps and stairs. She can also frequently stoop, kneel, crouch and crawl.  Further, [Plaintiff] can frequently reach, handle, finger and feel with the bilateral upper extremities but must avoid extreme cold and wetness. Cognitively, she can perform at least simple, routine, repetitive, unskilled work tasks.

(AR 15.)  The ALJ determined that Plaintiff had no past relevant work, and had a marginal education but was able to communicate in English.  (AR 20.)  Given this RFC, the ALJ determined there were jobs existing in significant numbers in the national economy Plaintiff could perform, including representative occupations bench hand assembler, DOT 715.684-026, table worker, DOT 739.687-182, and lens inserter, DOT 713.687-026, all sedentary work with an SVP of 2.  (AR 21.)  The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act.  (AR 21-22.)

The Appeals Council denied Plaintiff's request for review on April 24, 2015, making the ALJ's decision the Commissioner's final determination for purposes of judicial review.  (AR 1-4.)

1    **D.      Plaintiff's Complaint**

2          On June 26, 2015, Plaintiff filed a complaint before this Court seeking review of the ALJ's

3    decision.   (Doc. 1.)   Plaintiff argues that the ALJ failed to determine whether Plaintiff was

4    disabled as of the date of the written decision as required by Social Security Ruling[6] 13-3p, failed

5    to fully consider the medical opinion evidence of Plaintiff's treating physician Dr. Seo, and

6    improperly discredited Plaintiff's subjective pain testimony.   (Doc. 20.)

7                                  **III.    SCOPE OF REVIEW**

8          The ALJ's decision denying benefits "will be disturbed only if that decision is not

9    supported by substantial evidence or it is based upon legal error."   *Tidwell v. Apfel*, 161 F.3d 599,

10   601 (9th Cir. 1999).   In reviewing the Commissioner's decision, the Court may not substitute its

11   judgment for that of the Commissioner.   *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).

12   Instead, the Court must determine whether the Commissioner applied the proper legal standards

13   and whether substantial evidence exists in the record to support the Commissioner's findings.   *See*

14   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

15         "Substantial evidence is more than a mere scintilla but less than a preponderance."   *Ryan v.*

16   *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).   "Substantial evidence" means "such

17   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

18   *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*,

19   305 U.S. 197, 229 (1938)).   The Court "must consider the entire record as a whole, weighing both

20   the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and

21   may not affirm simply by isolating a specific quantum of supporting evidence."   *Lingenfelter v.*

22   *Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

23                                 **IV.    APPLICABLE LAW**

24         An individual is considered disabled for purposes of disability benefits if he is unable to

25   engage in any substantial, gainful activity by reason of any medically determinable physical or

26   _____

27   [6]    Social Security Rulings ("SSR") are final opinions and statements of policy by the Commissioner of Social
     Security, binding on all components of the Social Security Administration. 20 C.F.R. § 422.406(b)(1).  They are "to
     be relied upon as precedent in determining cases where the facts are basically the same."  *Paulson v. Bowen*, 836 F.2d
28   1249, 1252 n.2 (9th Cir. 1988).

1   mental impairment that can be expected to result in death or that has lasted, or can be expected to

2   last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

3   1382c(a)(3) (A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or

4   impairments must result from anatomical, physiological, or psychological abnormalities that are

5   demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

6   such severity that the claimant is not only unable to do his previous work, but cannot, considering

7   his age, education, and work experience, engage in any other kind of substantial, gainful work that

8   exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

9         The regulations provide that the ALJ must undertake a specific five-step sequential

10   analysis in the process of evaluating a disability.   In Step 1, the ALJ must determine whether the

11   claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b),

12   416.920(b).   If not, the ALJ must determine at Step 2 whether the claimant has a severe

13   impairment or a combination of impairments significantly limiting her from performing basic

14   work activities.   *Id.* §§ 404.1520(c), 416.920(c).   If so, the ALJ moves to Step 3 and determines

15   whether the claimant has a severe impairment or combination of impairments that meet or equal

16   the requirements of the Listing of Impairments ("Listing"), 20 § 404, Subpart P, App. 1, and is

17   therefore presumptively disabled.   *Id.* §§ 404.1520(d), 416.920(d).   If not, at Step 4 the ALJ must

18   determine whether the claimant has sufficient RFC despite the impairment or various limitations

19   to perform her past work.   *Id.* §§ 404.1520(f), 416.920(f).   If not, at Step 5, the burden shifts to the

20   Commissioner to show that the claimant can perform other work that exists in significant numbers

21   in the national economy.   *Id.* §§ 404.1520(g), 416.920(g).   If a claimant is found to be disabled or

22   not disabled at any step in the sequence, there is no need to consider subsequent steps.   *Tackett v.*

23   *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.   DISCUSSION

25         Plaintiff contends the ALJ failed to determine whether Plaintiff was disabled as of the date

26   of the written decision as required by SSR 13-3p, failed to fully consider the medical opinion

27   evidence of Plaintiff's treating physician Dr. Seo, and improperly discredited Plaintiff's subjective

28   pain testimony.   (Doc. 20.)

1    **A.      The ALJ's Consideration of Plaintiff's Disability under SSR 13-3p**

2          Plaintiff contends the ALJ erred by failing to adjudicate Plaintiff's disability status through

3    the date of her decision.  (Doc. 13, pp. 5-6.)  This contention is without merit.  As of the date of

4    the decision, the ALJ found that Plaintiff's disability "ended on January 1, 2012," and that

5    Plaintiff "has not become disabled again since that date." (AR 12.)  Plaintiff's assertion that "[t]he

6    ALJ only considered [her disability] up to January 1, 2012" (Doc. 13, p. 6) is without basis or

7    support in the record.  The ALJ summarized and discussed evidence gathered throughout 2012 and

8    2013 in reaching her RFC assessment (AR 17-19), and it is unclear on what basis Plaintiff asks the

9    Court to find otherwise.  Throughout her opinion, including her review of the Plaintiff's testimony

10   and the medical evidence, it is clear the ALJ fully considered the evidence relevant to Plaintiff's

11   impairment through the date of her decision.  The Court cannot find it a violation of SSR 13-3p to

12   not use the magic words "through the date of this decision" when virtually *all* the evidence and

13   testimony mentioned and analyzed comes from the period after the Plaintiff's disability was found

14   to have ceased (*see* AR 17-19).  "That is not to say that it could not have been made more

15   technically clear, but it is doubtful that this oversight alone would justify a remand." *Murr v.*

16   *Colvin*, No. 2:14-CV-161, 2015 WL 1746162, at *7 (E.D. Tenn. Apr. 16, 2015).

17         Even though the ALJ did not use the precise "magic words" "through the date of the

18   decision," there is no question that the ALJ specifically considered whether Plaintiff had been

19   disabled as of January 1, 2012, *or at any date between* January 1, 2012, and the date of the

20   decision. (AR 12.)  Plaintiff's argument the ALJ committed reversible error is without merit.

21   **B.      The ALJ's Consideration of the Medical Evidence**

22         Plaintiff contends the ALJ erred by refusing to credit a portion of Dr. Seo's opinion

23   without providing any legitimate or specific reason for doing so.  Plaintiff argues Dr. Seo found

24   her to be severely limited in social functioning and unable to work, but the ALJ ignored this

25   significant limitation in formulating Plaintiff's RFC and did not address Dr. Seo's opinion in this

26   regard at all.  The Commissioner responds that the ALJ properly discredited Dr. Seo's opinion as

27   internally inconsistent and unsupported by his own clinical findings, and that any error in failing

28   to explicitly address each portion of Dr. Seo's opinion was harmless.

1    The RFC is an assessment of an individual's ability to do sustained work-related physical

2    and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5

3    days a week, or an equivalent work schedule. Social Security Ruling ("SSR") 96-8p. The RFC

4    assessment considers only functional limitations and restrictions that result from an individual's

5    medically determinable impairment or combination of impairments. *Id.*

6    "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

7    record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including

8    pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc.*

9    *Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ "is responsible for translating and

10   incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d.

11   996, 1006 (9th Cir. 2015). The determination of a claimant's RFC is wholly within the province

12   of the ALJ. *See* SSR 96-8p. The RFC assessment is based on all the evidence in the record, and it

13   is the ALJ's duty to consider and weigh that evidence. *See id.*

14   The ALJ found Plaintiff capable of performing a range of sedentary work with postural and

15   manipulative limitations and limited to simple, routine, repetitive and unskilled work. (AR 15.)

16   Plaintiff contends the ALJ failed to take into account Dr. Seo's opinion that Plaintiff was severely

17   limited in social functioning and would be unable to work. (Doc. 13, pp. 11-13.)

18   Plaintiff saw Dr. Seo twice in 2013. On April 25, 2013, Plaintiff complained that she had a

19   lot of pain in her body, reported feeling depressed and anxious, and reported that "she has been

20   adherent to Paxil and low dose Seroquel with good response." (AR 533.) On examination,

21   Plaintiff was appropriately dressed and made good eye contact, was cooperative, and her behavior

22   was unremarkable. (AR 535.) Plaintiff's speech was slow, with low tone, but the amount, clarity

23   and fluency of her speech was normal; her thought process was logical, with unremarkable

24   thought content; and Plaintiff was oriented to person, place, date and time. (AR 536-37.) Dr. Seo

25   marked a box indicating that Plaintiff's ability to concentrate was impaired and that her immediate

26   and recent memory and insight were poor, and diagnosed Plaintiff with mood disorder, opioid

27   dependence, and personality disorder. (AR 538.) Dr. Song Seo assessed a GAF of 50, reflecting

28   his assessment of Plaintiff's global functioning at the high end of "serious symptoms." (AR 539.)

1    Though Plaintiff had been responding well to her current medications, Dr. Seo recommended

2    increasing Plaintiff's dosage of Paxil. (AR 540.)  When Dr. Seo saw Plaintiff for the second time

3    on July 22, 2013, he opined that Plaintiff was "much improved," recommended she continue with

4    her medications, transferred her treatment back to her primary care physician, and marked two

5    boxes on the form indicating Plaintiff could not work and that her expected length of treatment

6    would be six months. (AR 531-32.)

7            The ALJ discussed Dr. Seo's opinion and found it less than fully credible, noting that Dr.

8    Seo's observations of Plaintiff's symptoms and July 2013 note stating Plaintiff had responded well

9    to her medications and was stable, undermined his low GAF scale score assessment of 50.

10   (AR 18.)  Plaintiff does not challenge the ALJ's credibility finding, and the ALJ did not err in

11   weighing Dr. Seo's opinion.  *See Tommasetti*, 533 F.3d at 1041 (upholding rejection of

12   physician's opinion where "ultimate conclusions . . . did not mesh with her objective data or

13   history"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006)

14   (impairments that can be controlled effectively with medication are not disabling).  *See also* 20

15   C.F.R. §§ 404.1527(d)(3), (d)(4), 416.927(c)(4) (consistency of a medical opinion with the record

16   as a whole is a factor to evaluate in giving weight to any particular medical opinion).  Because Dr.

17   Seo's medical opinion was properly rejected, the ALJ was not required to explicitly incorporate it

18   into his RFC assessment.

19           The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the

20   medical evidence, *see Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001), and to formulate the RFC

21   based on the *entire* record, 20 C.F.R. § 404.1545(a)(3) (the RFC is based on all the relevant

22   evidence, including diagnoses, treatment, observations, and opinions of medical courses, as well

23   as observations by family members and the claimant's own subjective symptoms).  In considering

24   Plaintiff's mental abilities and limitations, the ALJ gave significant weight to the opinion of

25   agency psychiatric consultant Dr. Schmidt, who had specifically opined Plaintiff was malingering,

26   assessed a GAF score of 71-80, indicating transient symptoms and no more than slight

27   impairment, and opined Plaintiff would stabilize with the right combination and dosage of

28   medications. (AR 20.)  Based on this evidence, as well as other testimony and evidence in the

1   record, the ALJ concluded Plaintiff retains the ability to complete simple repetitive tasks.

2   (AR 15.)   Plaintiff's mental health functioning was therefore adequately accommodated by the

3   ALJ's RFC when she imposed the restriction of simple, routine tasks.   *Sabin v. Astrue*, 337 F.

4   App'x 617, 621 (9th Cir. 2009) (finding the ALJ properly "determined the end result of

5   [plaintiff's] moderate difficulties as to concentration, persistence, or pace was that she could do

6   simple and repetitive tasks"); *see also Stanley v. Astrue*, No. 1:09-CV-1743 SKO, 2010 WL

7   4942818, at *5 (E.D. Cal. Nov. 30, 2010) ("in limiting Plaintiff to simple, repetitive tasks, the ALJ

8   properly incorporated in his RFC finding [the doctor's] opinion that Plaintiff had moderate

9   difficulties in maintaining concentration, persistence, or pace").

10          Though Plaintiff is correct the ALJ was silent as to a portion of Dr. Seo's opinion -- the

11  checkmark indicating Plaintiff would be unable to work -- the determination of disability is an

12  issue that is reserved to the Commissioner.   *Thornsberry v. Colvin*, 552 F. App'x 691, 692 (9th

13  Cir. 2014) ("[A] doctor's opinion that a claimant is disabled is not itself a medical opinion but an

14  issue reserved exclusively for the Commissioner") (citation omitted); *see also* 20 C.F.R.

15  §§ 404.1527(d) and 416.927(d); SSR 96-5p, at *15 (July 2, 1996) (a disability determination is a

16  finding reserved to the Commissioner; a statement by a medical source that a person is "unable to

17  work" does not mean they are disabled).   Moreover, even were this an issue on which Dr. Seo

18  could opine, the ALJ was not required to individually reference every word of Dr. Seo's treating

19  record in his decision, *see Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ

20  does not need to discuss every piece of evidence when interpreting the record), where the ALJ

21  noted the agency opinion of Dr. Schmidt and expressly adopted the limitation for simple repetitive

22  tasks to address Plaintiff's mental health functioning.   *See Lewis*, 236 F.3d at 509 (ALJ resolves

23  conflicts and ambiguities in the evidence).

24          In sum, the ALJ did not err in his assessment of Plaintiff's mental health functioning.

25  **C.       The ALJ's Consideration of Testimony**

26          Plaintiff contends the ALJ failed to articulate clear and convincing reasons for discounting

27  her statements regarding the severity and extent of his ongoing symptoms.   The Commissioner

28  contends the ALJ properly relied on evidence in the record that undermined the credibility of

1  Plaintiff's subjective complaints.[7]

2        In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

3  must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Bunnell*

4  *v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  The ALJ must first determine whether

5  the claimant has presented objective medical evidence of an underlying impairment that could

6  reasonably be expected to produce the pain or other symptoms alleged.  *Vasquez*, 572 F.3d at 591.

7  The claimant is not required to show that his impairment "could reasonably be expected to cause

8  the severity of the symptom [he] has alleged; she need only show that it could reasonably have

9  caused some degree of the symptom."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the

10  claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

11  claimant's testimony about the severity of the symptoms if she gives "specific, clear and

12  convincing reasons" for the rejection.  *Id.*

13        The ALJ also may consider (1) the claimant's reputation for truthfulness, prior inconsistent

14  statements, or other inconsistent testimony, (2) unexplained or inadequately explained failure to

15  seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities.

16  *Tommasetti*, 533 F.3d at 1041; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-

17  27 (9th Cir. 2009); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); 20 C.F.R. §§ 404.1529,

18  416.929.  "If the ALJ's finding is supported by substantial evidence, the court may not engage in

19  second-guessing."  *Tommasetti*, 533 F.3d at 1039.

20        The ALJ reviewed the medical record and Plaintiff's allegations that she is unable to

21  perform all work due to her alleged impairments and other symptoms.  (AR 16-19.)  The ALJ

22  found that while Plaintiff's medically determinable impairments could reasonably be expected to

23  cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting

24  effects of those symptoms were not entirely credible.  (AR 19.)  The ALJ found that

25

26  [7]   The Commissioner heavily relies upon Dr. Schmidt's finding of malingering in arguing Plaintiff's subjective
testimony was properly rejected. (Doc. 20, pp. 11-12.)  However, the ALJ did *not* rely on the finding of malingering
27  as a basis for rejecting Plaintiff's testimony, and this Court is not permitted to accept post hoc explanations for the
ALJ's decision.  *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981); *Stout v. Commissioner, Social Sec.*
28  *Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001))
(reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner).

. . . With respect to [Plaintiff]'s current level of functioning, I cannot accept that [she] is unable to perform all work.  As noted above, the medical record shows that [Plaintiff]'s mental impairments have improved significantly and that her bilateral CTS does not preclude [her] from performing a range of work activities that accounts for her related functional limitation.  While the medical record does show abnormalities in the cervical and lumbar spines, these findings are not so significant as to justify a finding of disability.  [Plaintiff] has also not received much treatment for her back pain other than medication, which is not what I would expect were she as disabled as she claims.  And I have taken into account in my RFC [Plaintiff]'s alleged limitations in lifting and prolonged sitting, standing, and walking, and still find [Plaintiff] unable to perform work, even with these limitations.  Moreover, [Plaintiff]'s activities of daily living are fairly full, and her ability to concentrate is enough to do puzzles, such that I do not find her pain to reduce her functioning below this.  Finally, [Plaintiff]'s work history is not indicative of an individual who would be working if she could.

(AR 19.)

While the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be permissibly considered with others, *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).   An ALJ's credibility finding may properly be based on the inconsistency between a claimant's subjective complaints and the objective medical evidence. *See Batson v. Comm'r Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).  Here, the ALJ properly discounted Plaintiff's testimony that she could not work as inconsistent with relative minimal objective findings.  (AR 19; 407-08 (July 2012 examination concluding Plaintiff had no limitations in standing, walking, or sitting, no postural limitations, could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, and was capable of frequent manipulative activities); 531 (July 2013 mental health treating notes opining Plaintiff was "much improved").)

Where a plaintiff "complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."  *Orn*, 495 F.3d at 638.  Here, Plaintiff only received treatment for her hand pain through pain medications, and explicitly denied needing pain medication for her back pain.  (AR 50.)  Plaintiff's argument that her reliance on pain medication

1   is not somehow "conservative treatment" (Doc. 13, pp. 12-13) is unconvincing.  This is not a case

2   where Plaintiff had a history of surgical intervention, repeated nerve blocks or trigger point

3   injections, and "copious amounts of narcotic pain medications" together bolstering her allegations

4   of disabling pain.  *Cf. Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662, 664 (9th Cir. 2010) (reversing

5   ALJ's adverse credibility finding as unsupported by substantial evidence based on plaintiff's

6   history of cervical fusion surgery in an attempt to relieve her pain symptoms followed by narcotic

7   pain medications, occipital nerve blocks, and trigger point injections); *Christie v. Astrue*, No. CV

8   10-3448-PJW, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (reversing ALJ's adverse

9   credibility finding as unsupported when plaintiff demonstrated a history of "many different

10  treatment modalities, including narcotic pain medication, steroid injections, trigger point

11  injections, epidural shots, and cervical traction," which while not necessarily "the most aggressive

12  available" treatments, in combination convinced the court that "they are certainly not what the

13  Court would categorize as conservative"); *Huerta v. Astrue*, No. EDCV 07-1617-RC, 2009 WL

14  2241797, at *4 (C.D. Cal. Jul. 22, 2009) (reversing ALJ's adverse credibility finding as

15  unsupported by substantial evidence based on plaintiff's history of neck surgery, in combination

16  with referral to an anesthesiologist for pain management and receipt of a series of epidural steroid

17  injections into her cervical spine).

18      Further, Plaintiff's mental health treatment has been sporadic at best (*see* AR 17-18; 329

19  (though Plaintiff reported she had not found counseling beneficial, Dr. Schmidt observed Plaintiff

20  "ha[d] been in and out of counseling for crisis intervention only and has not appeared to work on

21  any root issues that have been promoting the marital discord"), and the ALJ appropriately

22  considered her treatment history, or lack thereof, in assessing her credibility.  *Molina v. Astrue*,

23  674 F.3d 1104, 1113 (9th Cir. 2012) ("an ALJ may properly rely on 'unexplained or inadequately

24  explained failure to seek treatment or to follow a prescribed course of treatment'") (quoting

25  *Tommasetti*, 533 F.3d at 1039). *See* 20 C.F.R. § 416.929(c)(3)(iv), (v) (treatment history and

26  medication regimen are relevant to assessing credibility).

27      The ALJ permissibly discounted Plaintiff's credibility based on her history of generally

28  conservative treatment.  *See* SSR 96-7p, 1996 WL 374186, at *7 (an "individual's statements may

1    be less credible if the level or frequency of treatment is inconsistent with the level of complaints");

2    *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative

3    treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment")

4    (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *Tommasetti*, 533 F.3d at 1040

5    (describing physical therapy as conservative treatment and noting that an ALJ may infer that a

6    claimant's "response to conservative treatment undermines [his] reports regarding the disabling

7    nature of his pain"); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (as amended) (rejecting

8    subjective pain complaints where petitioner's "claim that she experienced pain approaching the

9    highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she

10   received").

11          The ALJ also properly discounted Plaintiff's credibility based on her inconsistent

12   statements regarding her ability to engage in some degree of daily activity.  (AR 19.)  *See* 20

13   C.F.R. §§ 404.1529(c)(3)(i), 416.(c(3)(i) (daily activities are relevant to assessing whether a

14   claimant's statements are true); SSR 96-7p (same); *Molina*, 674 F.3d at 1113 (the ALJ may

15   consider "whether the claimant engages in daily activities inconsistent with the alleged

16   symptoms").  While the mere fact that a claimant engages in certain daily activities does not

17   necessarily detract from his credibility regarding overall disability, daily activities support an

18   adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in

19   pursuits involving the performance of physical functions or skills that are transferable to a work

20   setting.  *Orn*, 495 F.3d at 639; *see also Thomas*, 278 F.3d at 959.  A claimant's performance of

21   chores such as preparing meals, cleaning house, doing laundry, shopping, and interacting with

22   others has been considered sufficient to support an adverse credibility finding when performed for

23   a substantial portion of the day.  *See Stubbs-Danielson*, 539 F.3d at 1175; *Burch v. Barnhart*, 400

24   F.3d 676, 680-81 (9th Cir. 2005); *Thomas*, 278 F.3d at 959.

25          Plaintiff's admitted daily activities, including doing light chores around the house, taking

26   care of her personal needs, preparing simple meals, and concentrating long enough to complete

27   puzzles undermine her allegations of disabling pain and suggest she is capable of performing the

28   requirements of a reduced range of sedentary work.  *Thomas*, 278 F.3d at 958-59 (the claimant's

1  ability "to perform various household chores such as cooking, laundry, washing dishes, and

2  shopping" suggested the ability to perform a reduced range of light work); *Light v. Soc. Sec.*

3  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995).

4  *See also Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that

5  daily activities "did not suggest [the claimant] could return to his old job" but "did suggest that

6  [the claimant's] later claims about the severity of his limitations were exaggerated").

7         Finally, the ALJ permissibly found Plaintiff's credibility was weakened by her overall poor

8  work record. (AR 19.)  The ALJ is entitled to consider Plaintiff's work history in making a

9  credibility determination.   *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ

10  properly found poor work history and lack of propensity to work in lifetime negatively affected

11  claimant's credibility regarding her inability to work).  Plaintiff earned a total of $19,461.11 from

12  1996 through 2005, and only sporadic work history for the entire decade prior to her disability

13  determination in 2006. (*See* AR 155.)  Plaintiff does not have any past relevant work.  (AR 20.)

14  Plaintiff told consultative psychiatrist Dr. Schmidt that she stopped working in 2001 "after having

15  quit because she did not have transportation anymore and has not sought work since." (AR 329.)

16  The ALJ was entitled to consider Plaintiff's overall work history in discrediting her statements,

17  and such reasoning was supported by substantial evidence in the record.  *Kimbrough v. Astrue*,

18  No. 1:11-CV-01410-SKO, 2013 WL 268700, at *9 (E.D. Cal. Jan. 23, 2013).

19         In sum, the ALJ did not err in his evaluation of Plaintiff's credibility.

20                                          **CONCLUSION**

21         Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

22  evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

23  DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

24  Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Carolyn W. Colvin,

25  Acting Commissioner of Social Security, and against Plaintiff Irene Mendoza.

26

27  IT IS SO ORDERED.

28  Dated:   **August 1, 2016**                    /s/ *Sheila K. Oberto*

17

UNITED STATES MAGISTRATE JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28